IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE A. ROTH, WILLIAM J. RUST, MICHAEL W. DISHMAN, and PENELOPE R. HECKEL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No.  10 C 64 |
| v. | ) ) | |
| SAMUEL YINGLING, BRYCE CARUS, and AVON TOWNSHIP, an Illinois Township, | ) ) ) ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil-rights suit arises from a purported "New Year's purge" at the Avon Township Assessor's Office, in which the newly elected township administration discharged Plaintiffs from their public employment in retaliation for their support of the losing slate. Plaintiffs have filed suit under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, alleging that Defendants violated and conspired to violate their First and Fourteenth Amendment rights to free speech and due process. Defendants Samuel Yingling and Avon Township have moved to dismiss Count I of Plaintiffs' complaint, and all Defendants have moved to dismiss Counts II-III. (Count IV, a supplemental state-law claim, is not a subject of the present motion). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part. Count I is dismissed as against Defendant Yingling only. Counts II-III are dismissed as against all Defendants.

## FACTS

The relevant facts alleged in the complaint, which the court must take as true for present purposes, are as follows:

Prior to April 2009, Plaintiffs were all employed by the Avon Township Assessor's Office as deputy assessors (certified by state-administered examination), with tenures in the office ranging from four to fifteen years. In April 2009, the incumbent slate in Avon Township, which included then-Township Assessor Rick Dishman (not to be confused with plaintiff Michael Dishman) and Township Supervisor Shirley Christian, was defeated in a municipal election. Among the incoming regime were Defendants Bryce Carus, the new Township Assessor, and Samuel Yingling, the new Township Supervisor. Yingling took office in May 2009. Carus, pursuant to Illinois law, took office in January 2010.

Throughout the campaign and election, Plaintiffs publicly supported the incumbent slate and opposed the Yingling-Carus ticket. Almost immediately after Yingling took office, he "attempt[ed] to assert authority over the personnel decisions, work hours, and other related matters for the Avon Township Assessor's Office." To this end, Yingling removed (or had removed) Rick Dishman's name from the entrance of the Avon Township offices, even though Rick Dishman would not leave office for another eight months (i.e., when Carus took over in January 2010). He "advised" Plaintiffs that they were required to turn in their keys to him by December 31, 2009, since they would not be working for the Assessor's Office after that date, and he "threatened" them that they would not receive their paychecks if they failed to do so. He closed the Assessor's Office on December 31, 2009, even though Rick Dishman, the man properly in charge of the office, said it would be open that day. He "used his official powers" to change certain locks at Township Hall, including the entrance to the Assessor's Office, sometime around December 30, 2009. Lastly, he extended his "unlawful control" over the Assessor's Office by telling Plaintiff Heckel that she could not work on some (unspecified) day during the last week of December 2009, because the office needed to move her desk and use it for some

other purpose.  So much for Yingling's role in the alleged conspiracy.

Carus, for his part, lined up replacements for the soon-to-be-discharged Plaintiffs before he took office and arranged for the replacements to receive training in December 2009.  (They were, the complaint adds, wholly unqualified and utterly lacking in relevant experience.)  Even before he took office, Carus indicated to Plaintiffs at various times that they would be out of a job come January 1, 2010.  On December 30, 2009, Carus personally delivered a termination letter to Rust.  On January 4, 2010, Rust—along with the other Plaintiffs—nevertheless reported to work, since "they had not been properly terminated by any person with lawful authority to do so prior to that time."  But they could not get into the building, since Yingling and Carus had "conspired" to change the locks as of December 30, 2009.  Carus arrived at the office in due course and asked them what they were doing there and whether they had received their termination letters. Plaintiffs responded that they did not work for Carus at the time they received their purported termination letters, so they were just dutifully reporting to work.  Unimpressed, Carus fired them all on the spot.  He explained, "I want my own people."

Other members of the Avon Township Board knew (or at least turned a blind eye to the fact) that Carus and Yingling intended to fire any employees of the Assessor's Office who had supported Rick Dishman.  This "policy, custom or practice" of "ring out the old, bring in the new" that Yingling and Carus imposed was new to Avon Township, or at least to the Assessor's Office.  Prior to Yingling and Carus's election, the Assessor's Office "had always employed individuals irrespective of any election cycle or Assessor's term of office;" thus, employees continued on "so long as they desired to do so and performed their duties properly," as did Plaintiffs.  For instance, Heckel served under three different Township Assessors, while Roth

served under two, without ever having to be rehired or reappointed on account of municipal regime change.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that is, "a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (*Twombly* applies to "all civil actions"). This requirement imposes two relatively low hurdles. *First*, a complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964). *Second*, the allegations "must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.'" *Concentra*, 496 F.3d at 776. If the allegations do not suggest a right to relief—if for instance, a plaintiff relies merely on conclusions, labels, or formulaic recitations of the elements of a cause of action—a Rule 12(b)(6) motion should be granted. *See Twombly*, 550 U.S. at 570.

## ANALYSIS

### *Count I: First Amendment Retaliation*

Defendants Yingling and Avon Township (but not Carus) argue that Plaintiffs fail to state a First Amendment retaliation claim against them. The court agrees with Yingling but not with Avon Township.

To establish a prima facie case of retaliation under the First Amendment, Plaintiffs must ultimately show that (1) they engaged in activity protected by the First Amendment; (2) they

suffered a deprivation likely to deter First Amendment activity in the future; (3) the speech was at least a motivating factor behind Defendants' decision to take the retaliatory action. *E.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the "context of public employees who allege that their employers retaliated against them based on assertions of First Amendment rights, . . . a § 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964." *Mosely v. Bd. of Educ.*, 434 F.3d 527, 533-34 (7th Cir. 2006) (quoting *Spiegla v. Hull*, 371 F.d3 928, 941 (7th Cir. 2004)). Plaintiffs allege that they were discharged in retaliation for their political support of the Dishman-Christian administration. That, of course, is at the very core of their First Amendment rights. *See, e.g.*, *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)) (First Amendment is violated when public employee is terminated because of his or her political affiliations).

As for the alleged deprivation, the complaint alleges that Carus, not Yingling, discharged Plaintiffs. In their brief, Plaintiffs nevertheless argue that Yingling "deprived Plaintiffs of their employment" by dint of the other actions alleged in the complaint, including the premature removal of signage with Rick Dishman's name; the unauthorized closing of the office on December 31; the requisition of Heckel's desk; the installation of new locks on the township building; and the demand that Plaintiffs turn in their keys by year's end. None of this adds up to constructive discharge, and Plaintiffs' own allegations would scotch that theory anyhow: despite Yingling's allegedly retaliatory actions against them, they continued to report to work, and right up to moment when Carus fired them, they remained confident and forthright that "they had not been properly terminated by any person with lawful authority to do so prior to that time." It is unclear what else "deprivation of employment" might mean in this context, but Plaintiffs

need not plead a deprivation of that magnitude in the first place; any action that would deter "a person of ordinary firmness" from exercising his or her First Amendment rights will suffice. *See Mosely*, 434 F.3d at 534 (quoting *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989)). Even still, these allegations fall short of the mark. While Plaintiffs properly complain of being terminated by Carus, Yingling's actions add up to nothing that courts in this circuit recognize as actionable.

Next, Avon Township may be liable if Plaintiffs' discharge was the act of a "final policymaker" for the township in the specific area of personnel decisions for the Assessor's Office. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 (1997) (municipal liability for acts within scope of official's final policymaking authority); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989) (question is whether school district superintendent "possessed final policymaking authority in the area of employee transfers"); *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (municipality may be liable where challenged action undertaken by official "responsible under state law for making policy in that area of the city's business"). "[W]hether an official had final policymaking authority is a question of state law," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986); *see also McMillian*, 520 U.S. at 786, and "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 120.

Here, Illinois statutory law put that authority squarely in Carus's hands. The Illinois Township Code provides that the township assessor "shall be elected and have the powers and duties as provided in the Property Tax Code." 60 ICLS 1/77-5. The Property Tax Code provides, in turn, that the assessor "may appoint one or more suitable persons as deputies to assist in making the assessment, and may appoint other employees required for operation of the

office." 35 ILCS 22/2-65(a). Under § 2-65(a), a township assessor has "plenary power to hire or fire the employees required for operation of the assessor's office." *Harris v. Eckersall*, 771 N.E.2d 1072, 1073 (Ill. App. Ct. 2002). Indeed, the Property Tax Code expressly insulates the assessor's personnel decisions from review by the township. *See* 35 ILCS 200/2-15 ("The board shall have no power to approve or disapprove personnel of the . . . township assessor"). Thus, Carus clearly acted within the scope of his final policymaking authority when he fired Plaintiffs. Yet somehow, Avon Township purports to find in Carus's plenary authority a reason why it cannot be held liable for Plaintiffs' terminations. That would turn the law of municipal liability under § 1983 on its head and strip the controlling concept of "*final* policymaking authority" of any meaningful application in this context. Plaintiffs have adequately pled a basis for municipal liability against Avon Township.

### *Count II: Due Process*

To state a claim for violation of the Due Process clause of the Fourteenth Amendment, Plaintiffs must allege that they possessed a property interest in their continued employment that is protected by the Constitution. *See Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To that extent, "[a] protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract." *Crull*, 384 F.3d at 460 (citations and quotation marks omitted). The court therefore looks to Illinois law to determine whether Plaintiffs had a protected property interest in their continued public employment. Defendants contend that they did not, and the court agrees.

Illinois is an employment-at-will state. *Harris*, 771 N.E.2d at 1074. And "it is well settled that, absent legislative, administrative or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." *Id.* at 775 (citations and quotation marks omitted). Illinois public employees therefore have "no property interest in continued employment and may be terminated at will." *Id.* (citing *Levin v. Civil Service Comm'n*, 288 N.E.2d 97, 100 (Ill. 1972) ("a person has no property right in public employment")). And as the facts of *Harris* make clear, this includes employees of a township assessor's office. *See Harris*, 771 N.E.2d at 1073.

This much Plaintiffs do not and cannot dispute. So they rely on *Perry v. Sinderman* for the proposition that a plaintiff has a property interest for due-process purposes if his or her claim to a benefit is supported by "mutually explicit understandings," that is, a kind of "unwritten common law" as to how things work in the relevant neck of the woods. *See* 408 U.S. 593, 602 (1972). In *Perry*, the Court remanded for consideration of a university professor's claim that he effectively had tenure—though not secured by a formal contractual tenure provision—by operation of the school's unwritten *de facto* tenure program, "a no less binding understanding fostered by the college administration." *Id.* at 599-600. Likewise, Plaintiffs allege that employees of the Avon Township Assessor's Office have long enjoyed a mutual understanding with the Assessor's Office and with Avon Township that they can keep their jobs so long as their job performance remains up to snuff, regardless of any change in township administration. Such an arrangement, however, cannot be binding as a matter of Illinois law.

"It is firmly established that the 'mutually explicit understandings' that constitute property interests under the holding of *Perry* cannot be based on the representations of government officials who are not authorized to make such representations." *Crull*, 384 F.3d at

464 (citation and quotation marks omitted). Ever since *Millikan v. County of Edgar*, 32 N.E. 493 (Ill. 1892), Illinois courts have consistently held that "it is contrary to the effective administration of a political subdivision to allow elected officials to tie the hands of their successors with respect to decisions regarding the welfare of the subdivision." *Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd.*, 741 N.E.2d 1067, 1071 (Ill. App. Ct. 2000) (explaining *Millikan*); *see also Grassini v. DuPage Twp.*, 665 N.E.2d 860, 864 (Ill. App. Ct. 1996) (same). In *Millikan*, an elected county board of supervisors, who served one-year terms, hired a keeper of a poor house for an ostensible three-year term. The Illinois Supreme Court held that the board lacked the authority to enter into a contract that extended beyond its members' own terms; thus, the contract was void. *See* 32 N.E. at 494. In more recent times, Illinois courts have vigorously applied the general rule that local-government officials serving limited terms have no authority to hire employees for terms longer than their own; any contract (with certain well defined but inapplicable exceptions, e.g., collective bargaining agreements with public-school teachers' unions) purporting to establish such an arrangement is void *ab initio*. *See Vill. of Oak Lawn v. Faber*, 880 N.E.2d 659, 671 (Ill. App. Ct. 2007); *Cannizzo*, 741 N.E.2d at 1069; *Grassini*, 665 N.E.2d at 864; *Bogacz v. Bd. of Educ., Calumet Pub. Sch. Dist.*, 2003 U.S. Dist. LEXIS 15381, at *7-9 (N.D. Ill. August 29, 2003) (Darrah, J.); *Trombetta v. Bd. of Educ., Proviso Twp. High Sch. Dist. No. 209*, 2003 US. Dist. LEXIS 3993, at *6-8 (N.D. Ill. March 17, 2003) (Kennelly, J.). And what goes for a formal written contract in this context surely goes for the unwritten "mutual understanding" Plaintiffs allege they enjoyed with Yingling and Carus's predecessors in office. Either way, Illinois law does not allow local-government officials to bind their successors with beyond-term employment agreements. Plaintiffs therefore served at Carus's pleasure from the moment he took office, and their discharge could not have violated due process.

*Count III: Conspiracy*

Plaintiffs assert a cause of action for conspiracy under §§ 1985(1), (3). The court agrees with Defendants that neither section applies to the facts of this case.

By its terms, § 1985(1) applies only to conspiracies aimed at hindering a federal official's discharge of his or her official duties. *Friedman v. Village of Skokie*, 763 F.2d 236, 238 (7th Cir. 1985); *see* 42 U.S.C. § 1985(1). Plaintiffs appear to acknowledge this, as they do not even attempt to rescue this claim in their response.

To establish a claim for civil conspiracy under § 1985(3), Plaintiffs must ultimately show (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2005).

"The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." *Fairley v. Gackowski*, 578 F.3d 518, 525 (7th Cir. 2009) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)). Thus, where "all defendants are state actors . . . a § 1985(3) claim does not add anything except needless complexity" and may be dismissed as "superfluous." *Fairley*, 578 F.3d 525. Such is the case here.

Moreover, § 1985(3) requires Plaintiffs to "show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Green*, 281 F.3d at 665; *see also United Brotherhood of Carpenters and Joiners of America, Local 610 AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (§ 1985(3) requires "some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action'")); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("the conspiracy must be motivated by racial or other class-based discriminatory animus"). In a recent order, the Seventh Circuit reiterated that it "has consistently held that section 1985(3) does not cover alleged victims of nonracial political conspiracies" and declined the appellant's invitation to reconsider those precedents. *Hubble v. Voorhees*, 311 F. App'x 920, 923 (7th Cir. 2009) (nonprecedential disposition); *see also Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (§ 1985(3) inapplicable to "wholly non-racial but politically motivated conspiracy"). Plaintiffs have not pointed to any case in which the Seventh Circuit has held—as opposed to mused in dicta—that political (dis)loyalty can serve as the "invidiously discriminatory animus" required under § 1985(3). And that would be a surprising holding, since § 1985(3) deals with conspiracies aimed at depriving individuals, *qua* members of protected classes, of their right to equal protection of the laws. *See, e.g.*, *Green*, 281 F.3d at 665. Plaintiffs have not alleged any basis for liability under § 1985(3).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part. Count I of the complaint is dismissed as against Defendant Yingling only. Counts II-III are dismissed as against all Defendants.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: July 8, 2010**